IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN KNIGHT, DONNA RUSSELL KNIGHT, CHARLES COLE, VIIU NIILER, AND COUNTRY GLASS SHOP,<br><br>    Plaintiffs,<br><br>v.<br><br>CHRISTMAS TREE SHOPS, INC.<br><br>    Defendant. | Case No. 04 12698 JLT |

**DEFENDANT CHRISTMAS TREE SHOPS, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE
THIRD AND FOURTH COUNTS OF PLAINTIFFS' COMPLAINT**

Defendant Christmas Tree Shops, Inc. ("CTS"),[1] respectfully submits this memorandum in support of its Motion to Dismiss the Third and Fourth Counts of Plaintiffs' Complaint.

## I. INTRODUCTION

Plaintiffs design and sell handcrafted glasswork at a gallery on Cape Cod, but have alleged that CTS sells two products which -- though priced at less than $2.00 each and plainly "inferior to plaintiffs' work in craftsmanship and appearance" -- have so confused consumers as to constitute trade dress infringement and unfair competition. Complaint at ¶¶ 8, 10, 23-24. CTS has denied these claims, and soon will ask this Court to dispose of them on summary judgment. See Defendant Christmas Tree Shops, Inc.'s Answer to Plaintiffs' Complaint (filed herewith).

---

[1] CTS is a New England-based chain of discount stores, incorporated in Massachusetts.

But plaintiffs have not confined their pleading to baseless trade dress claims. Their Third and Fourth Counts seek to allege that CTS, through a purported pattern of "act[s] . . . involving . . . robbery" and the "importation of products made by slave and prison labor," has infiltrated and operates an amalgam of enterprises -- "the Peoples [sic] Liberation Army of China; Departments of the Government of the People's Republic of China; and other Chinese suppliers" -- in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(a), (c), and (d). Complaint at ¶¶ 31, 36, 43 and 47. These allegations too are baseless -- indeed, scurrilous -- but even as cavalierly pled, they fail to state an actionable RICO claim. CTS therefore has moved this Court to dismiss with prejudice these RICO counts, and respectfully submits this Memorandum to demonstrate plaintiffs' failures to plead the requisite predicate acts, enterprise, pattern, direction or injury that distinguish an actionable RICO claim.

## II. ARGUMENT

### A. Plaintiffs Have Not Stated -- And Cannot State On The Facts Alleged -- A Cognizable Claim Under RICO

"Civil RICO is an unusually potent weapon -- the litigation equivalent of a thermonuclear device. The very pendency of a RICO suit can be stigmatizing and its consummation can be costly." Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44 (1st Cir.1991). Accordingly, "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." Figueroa Ruiz v. Alegria, 896 F.2d 645, 650 (1st Cir.1990). In the instant case, it is clear that plaintiffs' claims are frivolous. Their skeletal accusations are unsupported by -- and at some points contradicted by -- any specific allegations of facts. "It is elementary that a RICO claim will not be sustained unless all the elements of the racketeering acts are adequately pled." Konstantinakos v.

Federal Deposit Ins. Corp., 719 F. Supp. 35, 40 (D. Mass. 1989). Plaintiffs have conjured up conspiracies with the Chinese government and the specter of slave labor, but they fail to plead with any particularization the five elements at the heart of a RICO claim.

1. Plaintiffs Have Not Adequately Pled Either An "Association-in-Fact" Enterprise Or That CTS Conducted or Participated in the Affairs of Such an Enterprise

Plaintiffs have alleged that "pursuant to the numerous agreements that were negotiated and executed between the defendant and Chinese suppliers as well as through their course of conduct, *the defendant and Chinese suppliers have formed a series of association-in-fact enterprises* . . ." identified as follows: the People's Liberation Army of China (PLA); Departments of the Government of the People's Republic of China; and other Chinese suppliers. Complaint at ¶ 31 (emphasis added).

Plaintiffs do not particularize which of the listed entities allegedly are "enterprises" unto themselves and which allegedly are part of some association-in-fact enterprises. At best, they apparently allege that CTS worked with various Chinese suppliers to create association-in-fact enterprises that in turn worked with the PLA and other unidentified organs of the Chinese government to commit "a pattern of racketeering activity." But these allegations, deliberately muddied in an effort to gloss over their substantive holes, fail to allege a single or amalgamated "association-in-fact" enterprise as required by 18 U.S.C. § 1961(4). Complaint at ¶ 32-35.

Plaintiffs cannot adequately plead an association-in-fact enterprise -- especially one that is so far-ranging -- by simply listing a string of entities allegedly comprising the enterprise, and then listing a string of supposed racketeering activities in which the enterprise purportedly engages. Notably, plaintiffs have failed to specify who at the PLA and which Departments of the Chinese Government were supposedly involved in the

3

enterprise, what these parties supposedly did, and how they were supposedly associated with each other, with CTS, or with the Chinese suppliers. These gaps are as glaring as they are fatal to plaintiffs' efforts to specify a RICO enterprise: "the complaint's mere allegation that an enterprise existed does nothing to support that claim or demonstrate *how* the defendants were purportedly associated in fact." Ahmed v. Rosenblatt, 118 F.3d 886, 889 (1st Cir. 1997) (emphasis added).

As the First Circuit Court of Appeals has pointed out, "the 'enterprise' is not the 'pattern of racketeering activity;' it is an entity apart and distinct from the pattern of activity in which it engaged." Libertad v. Welch, 53 F.3d 428, 441 (1st Cir. 1995). Here, plaintiffs have alleged nothing that would distinguish the "association" of alleged racketeers from the mere perpetration of the alleged racketeering. Even when confronted with more fulsome allegations, courts have made clear that a greater distinction between enterprise and acts is required. Compare Begala v. PNC Bank, 214 F.3d 776, 781-82 (6th Cir. 2000) (finding that the district court properly dismissed RICO claim because the complaint was "entirely devoid" of any allegations of coordination outside the alleged pattern of racketeering activity, even though the complaint stated that "[t]he enterprise was and is engaged in legitimate banking activities, *in addition to* the pattern of racketeering activity") (emphasis added).

Further, plaintiffs do not explain the alleged common purpose of the alleged enterprises, identify the particular course of conduct in which the participants purportedly collaborated, or state how CTS and the unspecified Chinese suppliers and unspecified Government departments and the PLA worked together to achieve any such common purposes. An enterprise, however, must be proved by evidence of an "ongoing

4

organization" and by evidence that "the various associates function as a continuing unit." United States v. Patrick, 428 F.3d 11, 18 (1st Cir. 2001). Here, without a single allegation of any proffered enterprise's continuity or shared endeavor, plaintiffs' muddled attempt must fail. See e.g., In re South African Apartheid Litig., 346 F.Supp.2d 538, 556-57 (S.D.N.Y. 2004) (dismissing claims where complaint set forth "[c]onclusory allegations that a group of corporations, whose sole common feature was the doing of business in a nation of millions of people at some point in a period of over forty years, is a RICO enterprise").

Further, even if plaintiffs could allege an actionable enterprise, they have not alleged the degree of participation in the affairs of that enterprise required to state a claim under 18 U.S.C. § 1962(c). That section provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise . . . *to conduct or participate*, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ..." 18 U.S.C. § 1962(c) (emphasis added). The U.S. Supreme Court has made clear that this "conduct or participate" requirement demands "some degree of direction," such that a defendant alleged to have conducted or participated in the enterprise's affairs within the meaning of § 1962(c) must have had "some part in directing those affairs." Reves v. Ernst & Young, 507 U.S. 170, 178-9 (1993); see also Goren v. New Vision Int'l, Inc., 156 F.3d 721, 727 (7th Cir.1998).

Plaintiffs have not alleged -- nor can they in good faith allege -- that CTS, a New England-based retailer, somehow has directed, operated or managed the affairs of the People's Liberation Army or the Chinese government. Moreover, plaintiffs concede that any control that CTS is alleged to have had over the affairs of unspecified Chinese

suppliers was obtained "pursuant to the numerous agreements" that they had negotiated and executed, *not* through a pattern of racketeering activity. Complaint at ¶ 31. Plaintiffs thus have either failed to allege any direction by CTS of the enterprise's affairs, or alleged only direction gained through a legal agreement, not through any illegal racketeering. Neither formulation constitutes wrongful "operation or management" of an enterprise in violation of § 1962(c).

2.  Plaintiffs Have Not Adequately Pled Qualifying Predicate Acts

This Court may consider only those predicate acts specifically alleged in the complaint. Fleet Credit Corp. v. Sion, 893 F.2d 441, 444 (1st Cir. 1990) (stating that the court "has no duty to conjure up unpled allegations in order to bolster the plaintiff's chances of surviving a 12(b)(6) motion to dismiss.") (internal quotations omitted). Here, plaintiffs have alleged that CTS committed the purported predicate acts of theft, theft of services, receiving stolen property, and copyright infringement, Complaint ¶¶ 38(a)-(d). None of these alleged offenses, however, is among the enumerated federal offenses that qualify as predicate acts under RICO. 18 U.S.C. § 1961(1)(B). They therefore could only qualify as predicate acts if they fell within the "catchall" provision for state law predicates, i.e., as an act chargeable under State law and punishable by imprisonment for more than one year and "involving ... robbery." 18 U.S.C. § 1961(1)(A). While plaintiffs do allege that "robbery" is a state crime which qualifies as a predicate act under the statute, Complaint at ¶ 36, they utterly fail to allege -- and cannot on the facts pleaded ever allege -- that CTS ever committed robbery, because they cannot allege the distinguishing elements of robbery, namely, force, violence, or fear.[2] Because plaintiffs

---

[2] Under Massachusetts law, robbery includes all of the elements of larceny (the unlawful taking and carrying away of the personal property of another with the specific intent to deprive the person of the

6

have not properly alleged any provisions of the United States Code that were supposedly violated by CTS, nor any qualifying violations of state law, they have not adequately pleaded any actionable predicate acts under RICO.

It is true that *criminal* copyright infringement is an enumerated predicate offense under 18 U.S.C. § 1961(1)(B), but criminal copyright infringement has not been alleged here. And tellingly, this omission is not the product of inartful pleading. Instead, it bespeaks plaintiffs' inability to plead the elements of criminal copyright infringement as a genuine predicate act. First, plaintiffs have not pled -- and cannot plead -- their ownership of an enforceable, registered copyright. See Sebastian Int'l, Inc. v. Russolillo, 186 F. Supp. 2d 1055, 1066 n.2 & 1070 (C.D. Cal. 2000). Second, plaintiffs have not pled -- and cannot on these facts establish -- that they have statutory standing to assert alleged violations of *third parties'* copyrights as predicate acts for their RICO claim. Perfect 10, Inc. v. CCBill, LLC, 340 F. Supp. 2d 1077, 1105-06 (C.D. Cal. 2004) (finding that the alleged copyright injury was too remote to allow the plaintiff statutory standing).[3] Instead, plaintiffs have done nothing more than mouth the words "copyright infringement," Complaint at ¶ 38(d), which alone cannot plead a predicate act meeting the definition of 18 U.S.C. § 1961(1)(B).

---

property permanently), and in addition requires that *force and violence* be used against the victim, or that the victim be put in *fear.* Commonwealth v. Goldstein, 54 Mass. App. Ct. 863, 867 (Mass. App. Ct. 2002). No such force, violence, or fear has been, or can be, alleged in the instant case, and as such, no cognizable claim involving robbery can be made.

[3] The three determinants of proximate cause under RICO are (1) the directness of the injury, (2) the difficulty of apportioning damages among potential plaintiffs, and (3) the possibility of other plaintiffs vindicating the goals of RICO. Allegheny General Hosp. v. Philip Morris, Inc., 228 F.3d 429, 443 (3d Cir. 2000). Plaintiffs' summary statement that "Defendant has stolen the copyrights ... of many other crafts makers," Complaint at ¶ 35, falls far short of this test to determine standing. First, the directness of the injury is unstated and unknown, making it difficult to ascertain the amount of Plaintiff's damages attributable to the alleged wrongdoing. Next, apportioning damages is made impossible where the other injured parties are not known. Finally, the possibility of other, more directly affected plaintiffs seeking to vindicate their rights means that the policies underlying RICO could be better achieved by other litigants.

3. <u>Plaintiffs Have Not Adequately Pled A Pattern of Racketeering Activity</u>

Even if their purported predicate acts had been adequately pled, plaintiffs cannot show that those acts, as alleged, are continuous or related enough to constitute a RICO pattern. Plaintiffs baldly have alleged that their listed predicate acts are "multiple acts of racketeering" which, without any supporting averments, somehow constitute a "pattern of racketeering activity." <u>Complaint</u> at ¶ 40. To establish the requisite "pattern," however, a plaintiff must "show that the racketeering acts are related, *and* that they amount to or pose a threat of continued criminal activity." <u>H.J. Inc. v. Northwestern Bell Tel. Co.</u>, 492 U.S. 229, 239 (1989).

Here, plaintiffs futilely seek to avoid this essential "continuity plus relationship" element by splintering two isolated acts of alleged infringement into purportedly multiple acts of robbery and theft. Courts in this Circuit and others long ago detected and rejected such artifice: "[A] single episode does not constitute a 'pattern,' even if that single episode involves behavior that amounts to several crimes." <u>Apparel Art Int'l v. Jacobson</u>, 967 F.2d 720, 723 (1st Cir. 1992). Here, the only "acts" of alleged theft, receipt of stolen property or copyright infringement proffered by plaintiffs are all part of a single, unified episode -- or, at best, two episodes -- in which CTS supposedly infringed two (unregistered) copyrights on two glassworks products, namely, the "sconce" and "grape plate" described in the Complaint. <u>Complaint</u> at ¶¶ 16-17.[4] This transparent attempt to

---

[4] Beyond these limited allegations, plaintiffs claim only that CTS "has stolen the copyrights and trade dress rights of many other crafts makers." <u>Complaint</u> ¶ 35. Here again, however, they fail completely to particularize how such allegations integrate into any actionable pattern, who the "other crafts makers" are, and how -- or even if -- such alleged acts have caused harm to plaintiffs. Finally, plaintiffs have failed to state how many of these purported third-party claims may have been settled or dismissed, which would render any such alleged acts insufficient to qualify as predicate acts. See, e.g., <u>Howard v. America Online Inc.</u>, 208 F.3d 741, 746-48 (9th Cir. 2000) (affirming the district court's dismissal of plaintiffs' claims "because they had been settled in an earlier action and could not constitute predicate acts under RICO," and further finding the settled acts to be insufficient to serve as part of a RICO pattern); <u>Swartz v. Schering-</u>

8

wring from one or two alleged acts a continuing series of purportedly separate crimes defies the very essence of a RICO pattern. Accordingly, for this additional reason, plaintiffs' claim under § 1962(c) must fail.

4.   Plaintiffs Have Not Been Harmed By The Separate Use or Investment of Any Alleged "Racketeering Proceeds" In Violation Of 18 U.S.C § 1962(a)

In their Fourth Count, plaintiffs allege that CTS derived substantial proceeds from its racketeering activity, that it "used or invested such proceeds in the operation of the association-in-fact enterprises detailed in [sic] above," and that as a result of this violation, "plaintiffs have been injured in their business or property," all in violation of RICO § 1962(a). Complaint ¶¶ 47-48. RICO Section 1962(a) does indeed prohibit the use or investment in an enterprise of income derived "from a pattern of racketeering activity," 18 U.S.C. § 1962(a), but to state a civil claim under that Section, a plaintiff additionally must allege a separate injury which results from the subsequent investment or use of the proceeds of the enterprise. Such cognizable § 1962(a) injury *cannot* arise simply from the underlying racketeering itself. See e.g., Compagnie De Reassurance D'Ile de France v. New England Reinsurance Corp., 57 F.3d 56, 91-92 (1st Cir. 1995). Because plaintiffs "have simply repeated the crux of their allegations in regard to the pattern of racketeering activity," id., they have failed to meet these separate requirements.

Here, plaintiffs specifically have alleged only injury directly caused by CTS's alleged infringement and unfair competition. Complaint at ¶ 38. They have failed to allege -- and again, on these facts, cannot allege -- any separate injury "resulting from the investment of racketeering income *distinct* from an injury caused by the predicate acts themselves." Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1188 (3d Cir.1993)

---

Plough Corp., 53 F.Supp.2d 95, 107 (D. Mass. 1999) (settled claims brought by FTC were insufficient to constitute predicate acts).

9

(emphasis added). Beyond that, plaintiffs have alleged only that CTS "used or invested such proceeds in the operation of *the association-in-fact enterprises detailed ... above.*" Complaint at ¶ 47. It is well established, however, that mere reinvestment of racketeering proceeds into the same alleged racketeering operation is *not* sufficient to state a claim under Section 1962(a). Wagh v. Metris Direct, Inc., 348 F.3d 1102, 1110 (9th Cir. 2003) ("[T]he acquisition and reinvestment of the proceeds of racketeering activity in the general affairs of an enterprise does not qualify as investment injury.") (internal quotations omitted); Fogie v. THORN Americas, Inc., 190 F.3d 889, 896 (8th Cir. 1999) ("[A]llegations of reinvestment do not suffice to give the plaintiffs standing ... [To] bring a claim under § 1962(a), a plaintiff must allege an injury from the use or investment of the racketeering income that is *separate and distinct* from injuries allegedly caused by the defendant's engaging in the predicate acts.") (emphasis added).

For both these reasons, then, plaintiffs cannot allege a cognizable claim under Section 1962(a).

5.  **Plaintiffs Cannot Adequately Allege Conspiracy In Violation Of 18 U.S.C § 1962(d)**

Plaintiffs' final claim is that CTS violated Section 1962(d) by conspiring to violate Sections 1962(a) and (c). Complaint at ¶ 47. As demonstrated above, however, plaintiffs have failed to plead the requisite elements of either a § 1962(a) or a § 1962(c) violation, which alone means that plaintiffs have failed to plead a conspiracy to violate either section. Nolen v. Nucentrix Broadband Networks Inc., 293 F.3d 926, 930 (5th Cir. 2002). "[I]f the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails." Efron v. Embassy Suites (Puerto Rico), Inc., 223 F.3d 12, 21 (1st Cir. 2000).

## III. CONCLUSION

This is a straightforward -- though baseless -- trade dress case involving two allegedly infringing products. It encompasses no adequately pleaded, or proveable, claims of infiltration of the Chinese Government and/or its Army, or any ongoing pattern of racketeering, or any distinct injury in violation of RICO. For all of the above-stated reasons, this Court should grant <u>Defendant CTS's Motion to Dismiss the Third and Fourth Counts of Plaintiffs' Complaint</u>, with prejudice.

    Respectfully submitted,

    CHRISTMAS TREE SHOPS, INC.
    By its attorneys:

    _____
    Peter A. Biagetti, Esq.
    Carrie Kei Heim, Esq.
    Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, PC
    One Financial Center
    Boston, MA 02111
    Tel. 617-542-6000
    Fax 617-542-2241

## CERTIFICATE OF SERVICE

I, Peter A. Biagetti, hereby certify that a true and exact copy of Defendant Christmas Tree Shops, Inc.'s Memorandum of Law in Support of Its Motion to Dismiss the Third and Fourth Counts of Plaintiffs' Complaint, dated May 4, 2005, has been served by fax and mail on attorney for plaintiffs as follows:

> Joel Joseph, Esq.
> 7272 Wisconsin Avenue #300
> Bethesda MD 20814
> Fax: 240-209-4000

Dated: May 4, 2005

Peter A. Biagetti, Esq.

LIT 1509507v6