**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JOHN KNIGHT, et al., ) <br> ) <br>   Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CHRISTMAS TREE SHOPS, INC., ) <br> ) <br>   Defendant. ) | **Case No. 04 12698 JLT** |

## CHRISTMAS TREE SHOPS, INC.'S MOTION TO STRIKE THE SURVEY AND REPORT OF PLAINTIFFS JOHN KNIGHT AND DONNA RUSSELL KNIGHT

Pursuant to Fed. R. Civ. P. 12(f), and Local Rule 7.1, defendant Christmas Tree Shops, Inc. ("CTS") respectfully moves to strike the survey and report offered by plaintiffs John Knight and Donna Russell Knight d/b/a The Glass Eye Gallery (collectively "Glass Eye"). Glass Eye designed a consumer survey and authored an "expert" report purporting to support its claims of trade dress infringement -- specifically its claims that the particular Glass Eye sconce at issue has acquired secondary meaning, and that consumers are likely to be confused as to the source of CTS's alleged "copy." As the Supreme Court has emphasized, a trial judge must examine expert testimony critically to ensure that it is both reliable and relevant before admitting it. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993). With that standard in mind, CTS respectfully submits that both the Glass Eye survey and the resulting report are so biased and methodologically flawed that they offer no competent evidence of actionable consumer confusion.

In trade dress cases, a survey's reliability "depends on whether (1) the sample tested is representative of the relevant consuming public; (2) the sample is numerically relevant; (3) the

questions were posed so as to avoid bias; (4) the methodology was scientifically valid and was developed by experts; (5) the interviewers were unaware of the litigation; and (6) the survey is supported at trial by expert testimony." J. Gilson, Trademark Protection and Practice § 8.11 (2006). Applying these criteria, the Glass Eye survey and report fail because they are infected by bias, errors in methodology, imprecise survey structure, and inconsistent survey results:

**(1) BIAS**

- The party offering survey evidence has the burden of establishing that the survey has been conducted in accordance with accepted principles of survey research. "To be admissible, the survey must be conducted by qualified experts and impartial observers. It must consist of non-leading questions presented to an appropriate 'universe' of respondents. The responses must also be recorded and interpreted in an unbiased manner." Simon Property Group L.P. v. MySimon, Inc., 104 F. Supp. 2d 1033, 1038, 1041 (S.D. Ind. 2000) (excluding surveys where flaws were so fundamental as to "strip the proposed survey of any significant probative value"). Here, however, the survey was authored, conducted and analyzed by the plaintiff, John Knight, who is a glass craftsman, not a survey expert. See Ex. A.[1]

- The survey polled only Glass Eye customers, and improperly suggested to them that its purpose was to muster support for Glass Eye's ongoing litigation, stating in the preface of each survey questionnaire: "In 2003 [sic] [Donna and John Knight] brought suit against The Christmas Tree Shops for copying their design…" See Ex. B; J. Gilson, Trademark Protection and Practice § 8.11 (2006).

- The survey is riddled with leading questions, including, "If confused, *was it because* the two sconces were so similar?" Ex. B (emphasis added). Survey results are not credible if the survey relies on leading questions which are "inherently suggestive and invite guessing by those who did not get any clear message at all." Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., 19 F.3d 125, 134 (3rd Cir. 1994); Straumann Co. v. Lifecore Biomedical Inc., 278 F.Supp. 2d 130, 138 (D. Mass. 2003) (survey "would not be helpful to a jury… because the survey suggested to the respondent that the products *did* come from a single manufacturer."). Here, the survey's question "Are you familiar with the Glass Eye sconce?" not only presumes the existence of a single source, but names that source as well.

**(2) FLAWS IN METHODOLOGY**

- The survey was confined to an extraordinarily small sample size, 30 respondents. See Ex. B; cf. Exxon Corp. v. XOIL Energy Res., Inc., 552 F. Supp. 1008, 1021-22 (S.D.N.Y.

---

[1] All cites in this Memorandum to "Ex. _" are to selected documents attached to the Affidavit of Carrie Kei Heim filed herewith.

2

> 1981) (confusion survey evidence afforded "no weight" because, "[o]nly 97 respondents were interviewed…and all of the interviewees came from the vicinity of [one city].").

- The survey's universe included only participants who had been hand-picked by plaintiff. Indeed, the resulting report is titled "Survey of Glass Eye Customers," and concedes that all survey participants have been Glass Eye customers since at least October of 2004. See Ex. C at 1; cf. Oneida, Ltd. v. National Silver Co., 25 N.Y.S.2d 271, 286 (N.Y. Sup. Ct. 1940) (surveys conducted in parties' own home towns found biased and accorded no weight).

- The survey did not include a control group, instead reaching only participants who were loyal customers of Glass Eye. Cf. Wells Fargo & Co. v. WhenU.com, Inc., 293 F. Supp.2d 734, 768-69 (E.D. Mich. 2003) ("[A] survey design must include a control group in order to account for the effects of 'noise'.") (internal citation omitted).

**(3)    IMPRECISE SURVEY STRUCTURE**

- The survey responses revealed that there were in fact *two* questionnaires distributed by plaintiffs. See Ex. B.[2] The two questionnaires differed in the substance and structure of multiple questions, but the report's misleading list of seven "Survey Questions" makes no mention of this difference. Ex. C at 1.

- The questionnaires asked only whether the participants were familiar with "*The* Glass Eye wall sconce." Ex. B (emphasis added). Because Glass Eye sold more than one style of sconce (see Consolidated Statement of Facts in Support of CTS's Motion for Summary Judgment at ¶4), the survey's failure to specify *which* sconce, either by photo or more precise description, irreparably undermines its results.

**(4)    INCONSISTENT RESULTS**

- The report claimed that 28 of 30 respondents were "not only very familiar with The Glass Eye's products, but *they also are regular Christmas Tree Shops customers.*" Ex. C at 2 (emphasis added). This directly contradicts the report's earlier statement that only "[t]wenty-five out of the 30 responses indicated that they shop at Christmas Tree Shops." Id. A review of the actual survey responses reveals that in fact only 25 survey participants "ever" shopped at CTS. Compare Ex. B at GE41-42, GE50, GE65 & GE68 with Ex. C at 2.

- Both versions of the survey questionnaire asked if the respondents were "confused" about the source of the CTS sconce. Without differentiating between the two versions of the questionnaire, the report claims that 13 respondents "stated that they were confused as to

---

[2] Twenty-six respondents received one version of the questionnaire, four received the other. See Ex. B at GE53-55, GE57 (only four out of 30 respondents were given the option to state, "I was not confused. The difference in quality was apparent even though the design was similar"; only four out of 30 respondents were not asked the leading question, "If confused, *was it because* the two sconces were so similar"; four out of 30 respondents were asked "Were you *at all* confused…" instead of "Were you confused…") (emphasis added).

3

the source of the sconce." Ex. C at 2.  A review of the actual survey responses, however, reveals that three respondents initially indicated confusion, but later stated that they were *not* confused.  See Ex. B at GE53, G55, GE57.  It appears that at least one of these three respondents, all of whom specifically checked the response, "I was not confused.  The difference in quality was apparent even though the design was similar," id., was included in the report's "confused" group of 13, a number to which the report repeatedly refers.  See Ex. B at 2-3.  See, e.g., General Motors Co. v. Cadillac Marine & Boat Co., 226 F. Supp. 716, 738 (W.D. Mich. 1964) (consumer surveys criticized because interviewers improperly categorized inconclusive responses).

Methodological deficiencies in a consumer survey "generally relate to the weight given to the survey's conclusions rather than to its admissibility, but if those deficiencies are so substantial as to render the survey's conclusions untrustworthy, a court should exclude the survey from evidence."[3]  Here, the consumer survey and report are undeniably "untrustworthy" due to bias, imprecision, inconsistency, and multiple methodological flaws.  Indeed, no reliable evidence of secondary meaning may be gleaned from a survey that actually *names the product's source*, and no actionable likelihood of confusion may be gleaned from a survey that actually *suggests the very answer that the survey's author -- and plaintiff -- seeks.*  This Court, therefore, should strike the Glass Eye survey and report.

---

[3] Winning Ways, Inc. v. Holloway Sportswear, Inc., 913 F.Supp. 1454, 1465 (D. Kan. 1996) (finding defects so significant as to render surveys inadmissible) (internal citations omitted); see also Scott Fetzer Co. v. House of Vacuums, Inc., 381 F.3d 477, 488 (5th Cir. 2004) (survey not admissible when it was "so badly flawed that it cannot be used to demonstrate the existence of a question of fact on the likelihood of consumer confusion."); American Footwear Corp. v. General Footwear Co. Ltd., 609 F.2d 655, 660 n.4 (2d Cir. 1979) (affirming district court's "rejection" of consumer surveys in light of "self-serving" questions and failure to conduct survey under "actual marketing conditions").

## REQUEST FOR ORAL ARGUMENT

CTS believes that oral argument will assist the Court, and accordingly requests oral argument on its <u>Motion to Strike the Survey and Report of Plaintiffs John Knight and Donna Russell Knight</u>.

Respectfully submitted,

**CHRISTMAS TREE SHOPS, INC.**

By its attorneys:

   /s/  Carrie Kei Heim
Peter A. Biagetti, Esq., BBO# 042310
Carrie Kei Heim, Esq., BBO# 652147
MINTZ, LEVIN, COHN, FERRIS,
   GLOVSKY AND POPEO, PC
One Financial Center
Boston, MA  02111
Tel. 617-542-6000
Fax 617-542-2241

Dated: May 15, 2006

LIT 1572206v.5

5