UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JOHN KNIGHT, et. al.                )
                                    )
                    Plaintiffs      )
                                    )
        v.                          )  04-12698 JLT
                                    )
CHRISTMAS TREE SHOPS, INC.          )
                                    )
                    Defendant       )


OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT


**Table of Contents**

I.      Introduction……………………….…………………………….…….4

II.     Trade Dress………………….………….…….……………………….5

            A. Secondary Meaning……………….……………………..6

            B.  Actual Copying……..…...……….….……………….…..….6

III.    Unfair Competition…………….…………………………………7

IV.     Conclusion…………………….…….……….…………………12

            Table of Authorities………………….……………………….2

1

**Table of Authorities**

<u>**Cases**</u>**:**

*Arnstein v. Porter,* 154 F.2d 464 (2d Cir. 1946)……………………………………………..7

*Boston Beer Co. Letd. P'ship v. Slesa Bros. Brewing Co*., 9 F.3d 175 at 182…..………6

*Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1

(1st Cir 2000)……………………………………………………….………4

*Fuddrucker v. Doc's B.R. Others, Inc.,* 826 F.2d 837 (9th Cir. 1987)……………..……..7

*Ideal Toy Corporation v. Plawner Toy Mfg. Corp*. 685 F.2d 78, (3d Cir. 1982)……….6

*I.P. Lund Trading Aps v. Kohler Co*. 163 F.3d 27, 35 (1st Cir. 1998)………..…………..5

*Kieselstein-Cord v. Accessories by Pearl, Inc.,* 632 F.2d 989 (2d Cir. 1980)………..5, 6

*Knorr-Nahrmittel A.G. v. Reese Finer Foods, Inc.,* 695 F.Supp. 792, (D.N.J. 1988)…..6

*Masschusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.,* 412 F.3d 215

(2005)…………………………………………………………………………….7, 8

*M. Kramer Mfg. Co*., 783 F.2d 421, 448, n. 24 (4th Cir. 1986)…………………..……..7

*PMP Assocs., Inc. v. Globe Newspaper Co*. 366 Mass. 593, 521 N.E. 2d 915 (1975)….11

*President of Trustees of Colby College v. Colby College-New Hampshire*, 508 F.2d 804

(1st Cir. 1975)…………………………………………………………..6

*Sno-Wizard Manufacturing Company v. Eisemann Productions Company,*

791 F.2d 423, (5th Cir. 1986)………………………………………………7

*The Yankee Candle Co. v. The Bridgewater Candle Co.,* 259 F.3d 25 (1st Cir. 2001)....5, 6

*Two Peso Inc. v. Taco Cabana, Inc*. 505 U.S. 763, 768, 112 S.Ct. 2753,

120 L.Ed. 2d 615 (1992)……………………………………………..………5

*Vision Sports, Inc. v. Melville Corporation*, 888 F.2d 609, 615 (9th Cir. 1989)……….6, 7

*Wal-Mart v. Samara*, 529 U.S. 205 (2000) …………………………………….…………..5

**Statutes:**

Mass. Gen. Law c. 93A………………………………………………………………passim

**Miscellaneous:**

2 McCarthy at §§23:34-35…………………………….………………………………7

Restatement Second of Torts, Section 711…………………….…………………………9

Restatement Third of Torts, Section 13……………………….………………………..9

# I.  Introduction

In this memorandum plaintiffs will refer to the defendant as Christmas Tree Shops or CTS.  When considering a motion for summary judgment, the evidence must be viewed in the light most favorable to plaintiffs, and the court must draw all reasonable inferences in plaintiffs' favor.  *Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 5 (1st Cir 2000).  Plaintiffs are submitting a statement of material facts as to which there is a genuine issue.

Plaintiffs are also submitting with this opposition, three affidavits, the portions of the depositions of Carolyn Cummings, Charles Bilezikian and John Knight, consumer survey and other exhibits.  Plaintiffs are relying on the photographs and illustrations of the products in question submitted by the defendant.  However, the plaintiffs request that the court review the actual products, which plaintiffs will submit during the hearing on the motion for summary judgment.

Defendant has submitted facts that are not only irrelevant, but are not accurate.  For example, defendant states the building that houses the Glass Eye is part residence.  This is incorrect.  The building is entirely commercial.

Christmas Tree Shops would like to have this court believe that it has engaged in "rightful" competition.  Nothing could be further from the truth.  Plaintiffs still believe that Christmas Tree Shops is a criminal enterprise.  While this court has dismissed the RICO claims, plaintiffs' trade dress and unfair competition claims remain vibrant.

Unfair competition is based on both statutory and common-law rights.  Unfair competition is competition that is immoral, unethical, oppressive, or unscrupulous.

The facts demonstrate (buyers from Christmas Tree Shops admitted this in depositions) that CTS bought two of plaintiffs' products (the wall sconce and the glass suncatcher) and sent them to China to be copied.  These products were copied and the copies are the same size and color and are virtually identical to the original. Concerning the other two products at issue, the products sold by Christmas Tree Shops are virtually identical to the plaintiffs' products, and this identicality is proof of unfair competition and trade dress infringement.

This practice by Christmas Tree Shops of directly copying designs of plaintiffs and others is immoral, unethical, oppressive, unscrupulous and violates plaintiffs trade dress rights and constitutes unfair competition.

## II.   Trade Dress

In order for trade dress to be protected under the Lanham Act, a plaintiff must show that the trade dress is:

1.  used in commerce;

2.  not functional;  and

3.  distinctive.  *I.P. Lund Trading Aps v. Kohler Co.* 163 F.3d 27, 35 (1st Cir. 1998).

The First Circuit has recently explained distinctiveness:

> "Distinctiveness may be either 'inherent,' that is, the 'intrinsic nature [of the trade dress] serves to identify a particular source,' *Wal-Mart*, 529 U.S. at 210, 120 S. Ct. 1339 (citing *Two Pesos, Inc. v. Taco Cabana, Inc.* 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed. 2d 615 (1992), or 'acquired,' i.e. the trade dress has acquired a 'secondary meaning. Whereby the public views its 'primary

> significance … as identify[ing] the source of the product
> rather than the product itself." id. at 211 . . . .*The Yankee
> Candle Co. v. The Bridgewater Candle Co.,* 259 F.3d 25,
> 38 (1st Cir. 2001).

All of plaintiffs' products were used and sold in commerce. The trade dress involved is not functional. While a wall sconce is intended to hold flowers, its design—the shape, size and design that make it unique do not hold special functions. A triangular wall sconce is no more or less functional that a four-sided wall sconce. The functionality of these products can be separated from the design, at least conceptually, and therefore functionality does not prevent intellectual property protection. *See Kieselstein-Cord v. Accessories by Pearl, Inc.*, 632 F.2d 989 (2d Cir. 1980).

Plaintiffs' products are all uniquely distinctive. In addition, they all have acquired secondary meaning.

## A.  Secondary Meaning

The First Circuit has noted that surveys are the preferred manner for demonstrating secondary meaning. *Boston Beer Co. Letd. P'ship v. Slesa Bros. Brewing Co.*, 9 F.3d 175 at 182. In the *Yankee Candle case, supra*, the First Circuit noted that "Yankee had failed to introduce any survey evidence . . . ." 259 F.3d at 39. In stark contrast, in this case The Glass Eye conducted a thorough survey. Defendants are challenging this survey by a separate motion, which plaintiffs will address in a separate response.

## B.  Actual Copying

Proof that a party has intentionally copied another's design elements strongly supports an inference of secondary meaning, *Vision Sports, Inc. v. Melville Corporation*,

888 F.2d 609, 615 (9th Cir. 1989).   In *Knorr-Nahrmittel A.G. v. Reese Finer Foods, Inc.,*
695 F.Supp. 787, 792, (D.N.J. 1988), the court noted that secondary meaning can be
shown by the fact of copying, citing *Ideal Toy Corporation v. Plawner Toy Mfg. Corp.*
685 F.2d 78, 82 (3d Cir. 1982).  In the *Knorr* case, the court noted that "So long as even a
small segment of the public has come to know and identify [the trade dress] . . ., plaintiffs
may show secondary meaning.  *See President of Trustees of Colby College v. Colby
College-New Hampshire*, 508 F.2d 804 (1st Cir. 1975)."  695 F.Supp. at 792.  The public
has come to know all of the plaintiffs' works as the source of this work.  The segment of
the public may be limited to Cape Cod, but under *Knorr* and the *Colby College case,* a
small segment is enough to show secondary meaning.  Certainly, the evidence produced
in opposition to this motion is enough to deny summary judgment and get this issue to the
jury.

> The Ninth Circuit in *Vision Sports* ruled:

> > A showing that defendant intended to copy plaintiff's trade
> > dress is entitled to substantial weight in the likelihood of
> > confusion.  *Fuddruckers,* 826 F.2d at 845-846.

*Fuddrucker v. Doc's B.R. Others, Inc.,* 826 F.2d 837 (9th Cir. 1987) also cites
other authority for its ruling that intentional copying strongly supports a finding of
secondary meaning.   In *M. Kramer Mfg. Co.*, 783 F.2d 421, 448, n. 24 (4th Cir. 1986),
the court stated that "courts almost unanimously presume a likelihood of confusion based
on a showing of intentional copying" (citing 2 McCarthy at §§23:34-35).  In *Sno-Wizard
Manufacturing Company v. Eisemann Productions Company,* 791 F.2d 423, 428 (5th Cir.
1986) the court found intent alone may be enough to support a finding of likelihood of
confusion.  A likelihood of confusion demonstrates "substantial similarity."

The underlying issues of copying and improper appropriation are jury issues.  In

*Arnstein v. Porter,* 154 F.2d 464 (2d Cir. 1946) Judge Jerome Frank wrote:

> Each of these two issues -- copying and improper
> appropriation -- is an issue of fact. If there is a trial,
> the conclusions on those issues of the trier of the
> facts -- of the judge if he sat without a jury, or of
> the jury if there was a jury trial -- bind this court on
> appeal, provided the evidence supports those find-
> ings, regardless of whether we would ourselves have
> reached the same conclusions.  *Arnstein v. Porter*, 154 F.2d
> 464, 469 (2d Cir. 1946).

Because Christmas Tree Shops copied plaintiffs' designs down to the smallest

detail, the jury will have to decide whether plaintiffs' trade dress was infringed.

## III.  Unfair Competition

In *Masschusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.,* 412 F.3d

215 (2005), the First Circuit recently summarized the Massachusetts law of unfair

competition.  The Circuit Court stated:

> Massachusetts General Law ch. 93A, §2 provides that
> "[u]nfair methods of competition and unfair or deceptive
> acts or practices in the conduct of any trade or commerce"
> are unlawful.  Mass. Gen. Law ch. 93A, §2.  In determining
> whether a practice violates Chapter 93A, we look to "(1)
> whether the practice . . . is within at least the penumbra of
> some common-law, statutory, or other established concept
> of unfairness; (2) ***whether it is immoral, unethical,
> oppressive, or unscrupulous***; [and] (3) whether it causes
> substantial injury to consumers (or competitors or other
> businessmen.)."  *PMP Assocs., Inc. v. Globe Newspaper
> Co.* 366 Mass. 593, 521 N.E. 2d 915, 917 (1975)
> (quotations omitted). 412 F.3d at 243 (emphasis added).

Charles Bilezikian, The Chief Executive Officer of Christmas Tree Shops testified

under oath at his deposition in this case that it was immoral for a company to exactly

copy the work of an artist. See Bilezikian deposition at page 20.  That is exactly what his firm has done.  The actions of the Christmas Tree Shops in copying the work of four different products in this case is not only immoral, it is unethical, oppressive and unscrupulous.

Further, the type of copying done by Christmas Tree Shops is undermining the very fiber of American society by injuring American creativity and taking American jobs overseas.  Every one of plaintiffs' products is made entirely in the United States of America.  All of these products are made in New England, most in Massachusetts.

In stark contrast Christmas Tree Shops is having copies of plaintiffs' products made in the Peoples Republic of China for pennies on the dollar, by workers who are paid 20 cents per hour.  This is oppressive and unscrupulous.

Under common law, unfair competition is generally defined as the act or practice of engaging in a number of actions including false advertising; bait and switch selling tactics; unauthorized substitution of one brand of goods for another; use of confidential information by former employee to solicit customers; theft of trade secrets; breach of a restrictive covenant; trade libel; and false representation of products or services. See Restatement Third of Torts, Section 13, pp. 37-38.

The Restatement of Torts provides as follows:

> One who
>
> (a) fraudulently markets his goods or services as those of another, or

(b) infringes another's trademark or trade name, or

(c) ***markets goods with an unprivileged imitation of the physical appearance of another's goods is liable to the other*** for relief appropriate under the rules stated in Sections 744-748.

Restatement Second of Torts, Section 711 (emphasis added).

Christmas Tree Shops undeniably "imitated the physical appearance" of plaintiffs' goods. One who is liable to another under the rules stated in Sections 711-743 is liable for the pecuniary loss to the other resulting from the harm to his business caused by the actor's conduct, if, but only if, the actor engaged in his conduct with the purpose of securing the benefit of the reputation in the market of the other, or his goods, services, business, trademark or trade name or the ***physical appearance of his goods***. Restatement Second of Torts, Section 745.

Mass. Gen. Law c. 93A, is the statutory framework for unfair competition cited in *Masschusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.,* 412 F.3d 215 (2005), *supra.* In pertinent part, Chapter 93A: Section 2 concerning "Unfair practices; legislative intent; rules and regulations" provides as follows:

(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

(b) It is the intent of the legislature that in construing paragraph (a) of this section in actions brought under sections four, nine and eleven, the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1), as from time to time amended.

Finally, the statute further provides for damages:

"If the court finds for the petitioner, ***recovery shall be in the amount of actual damages; or up to three, but not less than two,*** times such amount if the court finds that the use or employment of the method of competition or the act or practice was a willful or knowing violation of said section two. For the purposes of this chapter, the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence regardless of the existence or nonexistence of insurance coverage available in payment of the claim. In addition, the court shall award such other equitable relief, including an injunction, as it deems to be necessary and proper." Mass. Gen. Law c. 93A, Section Eleven. (emphasis added).

Under Massachusetts law, trademark infringement (which includes trade dress infringement) and dilution, defamation and unfair competition clearly constitute a violation of Section Two of Mass. Gen. Law c. 93A. As such, an aggrieved party may seek damages under Mass. Gen. Law c. 93A in order to recover treble damages and attorney's fees.

In determining whether a practice violates Chapter 93A, the courts look to "(1) whether the practice . . . is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." *PMP Assocs., Inc. v. Globe Newspaper Co.,* 321 N.E.2d 915, 917 (Mass. 1975) (quotations omitted).

## IV.  Conclusion

Christmas Tree Shops has infringed the trade dress rights of plaintiffs by copying their trade dress.  Christmas Tree shops has also committed unfair competition by copying the product designs for all of plaintiffs' products and having them copied in China.

Christmas Tree Shops' copies of plaintiffs' products are more than substantially similar.  These copies are virtually identical.  Placed next to each other the products are the same shapes and the same sizes.  They are made out of the same materials.

The only real difference is that the copies are inferior in quality.

Consumers confuse Christmas Tree Shops' copies with the plaintiffs' originals. These copies have harmed plaintiffs, who rely on their work to sustain their families.

Plaintiffs should not be required to prove secondary meaning because their products were copied down to the smallest detail.  However, plaintiffs have shown that their products have acquired secondary meaning.

For all of these reasons, the motion for summary judgment should be denied.

Respectfully submitted,

_____/s/_____

DANIEL CHAIKA
CHAIKA & CHAIKA
30 Rolfe Square
Cranston, RI
(401) 941-5070

_____/s/_____

JOEL D. JOSEPH
7272 Wisconsin Avenue, Suite 300
Bethesda, MD 20814
(301) 941-1989
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JOHN KNIGHT, et. al.    )
           )
      Plaintiffs  )
           )
   v.       ) 04-12698 JLT
           )
CHRISTMAS TREE SHOPS, INC. )
           )
      Defendant  )

## PLAINTIFFS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS A GENUINE ISSUE

### Index of Exhibits

**DEPOSITION EXCERPTS**

1.  Deposition of Carolyn Cummings on behalf of Christmas Tree Shops, dated September 23, 2005.

2.  Deposition of Charles Bilezikian date February 7, 2006.

3.  Deposition of John Knight, dated November 9, 2005.

**AFFIDAVITS**

1.  Affidavit of Susan R. Boerman.

2.  Affidavit of Gary Briggs.

3.  Affidavit of Judy Hill.

**DOCUMENTS**

1.  Report of Survey of The Glass Eye.

2.  Book, *It's Great to Create* by Susan Boerman.

3.  Illustrations/Photos of Glass Eye Wall Sconce and Christmas Tree Shops Wall

Sconce.  *[Plaintiffs intend to introduce the actual products at a hearing held on*

*the motion for summary judgment.]*

4.  Illustrations/Photos of Country Glass Suncatcher and Christmas Tree Shops

Suncatcher.  *[Plaintiffs intend to introduce the actual products at a hearing held on*

*the motion for summary judgment.]*

5.  Illustrations/Photos of Susan Boerman wooden placques and Christmas Tree Shops

wooden placques.  *[Plaintiffs intend to introduce the actual products at a hearing*

*held on the motion for summary judgment.]*

6.  Illustrations/Photos of Aunt Sadie's candles in a can and Christmas Tree Shops

candles in a can.  *[Plaintiffs intend to introduce the actual products at a hearing*

*held on the motion for summary judgment.]*


<u>Statement of Material Facts as to Which There is a Genuine Issue</u>

**<u>GLASS EYE, THE GLASS EYE SCONCE AND THE CTS WALL VASE</u>**

1.  The Christmas Tree Shops purchased a wall sconce from The Glass Eye, and sent it to

Briwell in China to have it copied and 24,000 copies were made, most of which were sold.

Deposition of Carolyn Cummings at 38, 45, 46, 50, 53.

2.  The trade dress elements of the Glass Eye sconce are not functional.  The sconce is

made of three pieces of glass of specific shapes.  These shapes are not functional.  The pattern on

the metal that holds the glass together is not functional.  The size of the glass pieces have no

relationship to function.

3.   The Christmas Tree Shops wall sconce is virtually identical to the Glass Eye wall sconce.  Carolyn Cummings, on behalf on Christmas Tree Shops, testified that they are very similar.  Deposition at 37.  Plaintiffs ask that the court review the actual products and compare them.

4.   Most customers of the Glass Eye also shop at Christmas Tree Shops.  Report of the Survey of The Glass Eye.

5.   Most of the customers of the Glass Eye know the wall sconce to be made by the Glass Eye, saw a similar sconce at Christmas Tree Shops and were confused as to the source of the Christmas Tree Shops' wall sconce.

6.   John Knight has been making the wall sconce for 14 years and is well-known for it.  Report of Glass Eye Survey and Deposition of John Knight at 18, 19, 28, 34, 35, 40, 43, 47, 48.

7.   The Glass Eye wall sconce has acquired secondary meaning.

8.   The Christmas Tree Shops wall sconce is inferior to the Glass Eye wall sconce and has harmed Glass Eye's reputation and income as a result.

**COUNTRY GLASS SUNCATCHER**

1.   The Christmas Tree Shops purchased a Country Glass suncatcher from The Glass Eye, sent it to Zibo Anto Glass in China to have it copied and that 4,800 copies were made and most of them were sold. Deposition of Carolyn Cummings at 45, 46, 47, 50, 53.

2.   The Christmas Tree Shops suncatcher is virtually identical to the Country Glass suncatcher.  Plaintiffs ask that the court review the actual products and compare them.

3.   Hill's of Nantucket has been selling the glass art of Chet Cole and Viiu Niiler, Country Glass, for twenty-five years.  Affidavit of Judy Hill at paragraph 6.

4.    The glass art created by Chet Cole and Viiu Niiler is unique in the industry.  Affidavit of Judy Hill at paragraph 7.

5.    Retailers recognize the style of Chet Cole and Viiu Niiler and can identify the source of work created by them, as can any person who has been in the glass business for several years. Affidavit of Judy Hill at paragraph 8.

6.    The Christmas Tree Shops Nantucket Basket suncatcher is virtually identical to the Country Glass suncatcher designed and made by Viiu Niiler and Charles Cole.  Plaintiffs ask that the court review the actual products and compare them.

7.    The Country Glass Nantucket Basket suncatcher has acquired secondary meaning.

8.    The Christmas Tree Shops Nantucket Basket suncatcher is inferior to the Country Glass Nantucket Basket suncatcher and has harmed Country Glass's reputation and income as a result.

## SUSAN BOERMAN WOODEN PLACQUES

1.    Susan Boerman created designs for two wooden plaques, "Frosty's Snow Cones" and "Autumn Harvest."  Affidavit of Susan Boerman paragraphs 1-6 and exhibit,  *It's Great to Create*.

2.    At least two people found copies of Frosty's Snow Cones" and "Autumn Harvest at Christmas Tree Shops.  Boerman affidavit at paragraphs 11, 12.

3.    Plaintiffs ask that the court review the actual products and compare them.

4.    These plaques have recognizable trade dress in their designs, sizes, materials and artwork.

5.    "Frosty's Snow Cones" and "Autumn Harvest" have acquired secondary meaning. Affidavit of Susan Boerman and *It's Great to Create*.

6.    The Christmas Tree Shops "Frosty's Snow Cones" and "Autumn Harvest" wooden plaques are to those made by Susan Boerman and have harmed her reputation and income as a result.

## AUNT SADIE'S CANDLES

1.    Aunt Sadie's created designs for its unique candles.

2.    More than 20 people were confused by similar candles found at Christmas Tree Shops.  Affidavit of Gary Briggs.

3.    Plaintiffs ask that the court review the actual products and compare them.

4.    Aunt Sadie's candles have recognizable trade dress in their designs, sizes, materials, packaging and artwork.

5.    Aunt Sadie's candles have acquired secondary meaning.  Affidavit of Gary Briggs.

6.    The Christmas Tree Shops candles in a can are inferior to the Aunt Sadie's candles in a can and have harmed Aunt Sadie's reputation and income as a result.

## UNFAIR COMPETITION

1.    It is morally wrong to copy the designs of artists.  Deposition of Charles Bilezikian, dated February 7, 2006 at page 20.  Mr. Bilezikian is the Chief Executive Officer of Christmas Tree Shops.

              /s/
DANIEL CHAIKA
CHAIKA & CHAIKA
30 Rolfe Square
Cranston, RI
(401) 941-5070

_____/s/_____
JOEL D. JOSEPH
7272 Wisconsin Avenue, Suite 300
Bethesda, MD 20814
(301) 941-1989

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JOHN KNIGHT, et. al.          )
                              )
              Plaintiffs      )
                              )
     v.                       )   04-12698 JLT
                              )
CHRISTMAS TREE SHOPS, INC.    )
                              )
              Defendant       )

## AFFIDAVIT OF GARY BRIGGS

Gary Briggs affirms under oath that the following statements are accurate and truthful:

1.  I am Gary Briggs, officer of Aunt Sadie's, Inc, one of the plaintiffs in the above-caption ed case.

2.  More than twenty people have told me that they saw Aunt Sadie's candles, or candles that were confusingly similar to Aunt Sadie's candles, at a Christmas Tree Shop.

3.  The following individuals, who I believe reside in or near Massachusetts, have either been in a Christmas Tree Shop store and have commented to me either that they've seen Aunt Sadie's candles there, or they have seen candles from Christmas Tree Shops and have commented that they think they're Aunt Sadie's candles or were confused about the source:

   a.  Martha Field (a gift sales rep in Massachusetts);

   b.  Keith Maddy;

   c.  Sean Cahill;

   d.  Ofelia Gonzalez;

   e.  Elaine Russell;

   f.  Maria Cabrera;

    h.  Caroline Crescenzi;

    i.  Roy Cambara;

    j.  Irma Cambara;

    k.  Pam Garramone;

    l.  Jessica Cirpriani;

    m.  Joanne Rossman (retail store owner);

    n.  David Gaita; and

    o.  David Snyder.

  4.  Aunt Sadie's candles are unique because of their trade dress:

    a.  Specific size and shape of can;

    b.  Quality of wax;

    c.  Quality of the fragrance;

    d.  Clear-plastic top;

    e.  Paper wrapping that is decorative and "Aunt Sadie's style."

  5.  I have seen the Christmas Tree Shops' versions of Aunt Sadie's candles and they are substantially similar to Aunt Sadie's in appearance, wrapping and cover and identical in size and shape.

  Subscribed and sworn to before me this 1st day of June, 2006.

                                        GARY BRIGGS

  AL MONTEJO
  Notary Public
  Commonwealth of Massachusetts
  My Commission Expires
  March 23, 2012                        NOTARY PUBLIC

2

JOHN KNIGHT, et. al.            )

                            )

           Plaintiffs       )

                            )

     v.  )  04-12698 JLT

                            )

CHRISTMAS TREE SHOPS, INC.   )

                            )

           Defendant     )

## AFFIDAVIT OF SUSAN R. BOERMAN

Susan R. Boerman affirms under oath that the following statements are accurate and truthful:

1.     I am Susan R. Boerman, one of the plaintiffs in the above-captioned case.

2.     I am the author of the book, *It's Great to Create*, a copy of portions of which is attached to this affidavit.

3.     I obtained a copyright from the Copyright Office for this book.

4.     When the book was published I inserted a " © 2001 Susan R. Boerman" copyright notice.

5.     On pages 18-21 of this book I have illustrations of "Frosty's Snow Cone."

6.     On pages     22-25 of this book I have illustrations of "Autumn Harvest."

7.     I have taught a decorative painting class in Taunton, Massachusetts for six years, first at the Gift Boutique and then at the Taunton Art Association.

8.     I have taught approximately 30 students in my classes.

9.     I use the book, *It's Great to Create*, as part of this course.

1

10.    Two of my students, Beth Crowell, and Jeanne Quinn, independently, came up to me after class and told me, "Your plaques are being sold at the Christmas Tree Shop."

11.    Beth Crowell told me that she saw my "Autumn Harvest" at the Christmas Tree Shop.

12.    Jeanne Quinn told me that she saw my "Frosty's Snow Cone" at the Christmas Tree Shop.

13.    I sell my hand-painted plaques for $18 - $25 each.

14.    I have sold three or four "Frosty's Snow Cones" and four or five of "Autumn Harvest."

15.    I have seen the Christmas Tree Shops version of "Frosty's Snow Cone" and it is substantial similar to mine in appearance, and identical in size and shape.


Subscribed and sworn to before me this 1st day of June, 2006.


_Susan R. Boerman_
SUSAN R. BOERMAN


_Jolie A. Sprague Martin_
NOTARY PUBLIC



JOLIE A. SPRAGUE MARTIN
Notary Public
Commonwealth of Massachusetts
My Commission Expires Mar 16, 2007

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JOHN KNIGHT, et. al.                    )
                                        )
                    Plaintiffs          )
                                        )
        v.                              ) 04-12698 JLT
                                        )
CHRISTMAS TREE SHOPS, INC.              )
                                        )
                    Defendant           )

AFFIDAVIT OF JUDY HILL

Judy Hill affirms under oath that the following statements are accurate and truthful:

1.  I am Judy Hill, proprietor of Hill's of Nantucket, located at 40 Straight Wharf

Nantucket Island, MA 02554.

2.   Hill's of Nantucket was established in 1980 and has continuously been in business

since that time.

3.  Hill's of Nantucket sells artwork, glass and gifts.

4.  I regularly attend trade shows around the United States and I am familiar with

significant glass artists.  I regularly attend the San Francisco and Los Angeles Gift Shows, two of

the largest gift shows in the United States.

5.  I am familiar with many gift and glass galleries on both the East and the West Coasts.

6.  I have been selling the glass art of Chet Cole and Viiu Niiler, Country Glass, for

twenty-five years.

7.  The glass art created by Chet Cole and Viiu Niiler is unique in the industry.

8.  I recognize their style and can identify the source of work created by them, as can any

person who has been in the glass business for several years.

1

9.  Their work is easily identified because it is hand-pressed, recycled glass, of their unique style.

10. In particular, their Nantucket Basket piece is particularly unique, and well-known not only on Nantucket, but in fine gift shops around the country.

Subscribed and sworn to before me this 2st day of June, 2006.

/s/

_____

JUDY HILL

/s/

_____

NOTARY PUBLIC

# Report of Survey of Glass

# Eye Customers

March 31, 2006

## Survey Questions

The survey questions were as follows:

1. Have you ever shopped at a Christmas Tree Shop?

2. About how many times have you shopped at a Christmas Tree Shop last year?

3. Are you familiar with The Glass Eye wall sconce made for holding dried flowers?

4. Have you ever seen a similar-looking sconce at the Christmas Tree Shop?

5. Were you confused about who produced the sconce found at the Christmas Tree Shop?

6. If confused, was it because the two sconces were so similar?

7. Did you think that The Glass Eye must have sold their design and/or sconces to the Christmas Tree Shops?

## Survey Universe

The surveys were sent by mail to 148 customers of the Glass Eye. The list was based on customers of during the month of October, 2004.

## Survey Responses and Results

To date, 30 responses have been received. This represents a response rate of 20.3%. Additional responses will be retained, tabulated and made available to the defendant.

Twenty-five out of the 30 responses indicated that they shop at Christmas Tree Shops. This means that 83.33 percent of the respondents shop at both Christmas Tree Shops and The Glass Eye, a very significant overlapping of customers.

According to those who have shopped at the Christmas Tree Shops, these customers made a total of 413.5 trips to Christmas Tree Shops during the past year. (The 0.5 total occurred because when a response stated that the customer had been to the Christmas Tree Shops 6-7 times, the response was marked as 6.5 visits). Based on the 25 customers who visited Christmas Tree Shops, they shopped at CTS an average of 16.54 times during the past year. These are regular Christmas Tree Shops customers, visiting the store more than once per month on average.

Twenty-eight of the 30 respondents stated that they were familiar with The Glass Eye wall sconce. This represents 93.33 percent. This group is therefore not only very familiar with The Glass Eye's products, but they also are regular Christmas Tree Shops customers.

Of the 25 respondents who shop at Christmas Tree Shops, 19 noticed the Christmas Tree Shops wall sconce. This means that 76% of those who shop at Christmas Tree Shops, noticed the wall sconce.

Of those 19 who saw the sconce, 13 stated that they were confused as to the source of the sconce. This represents 68.4% of those who noticed the wall

sconce.  In other words, 68.4% of those customers who saw the Christmas Tree Shops wall sconce were confused as to the source of the sconce.

Eleven of the 13 (84.6%) who were confused noted that similarity between the sconces as one source for this confusion.   Three of the 13 (23%) thought that The Glass Eye had either sold the sconce or the design to Christmas Tree Shops.

Fifteen of those 19 (78.9%) who saw the sconce at Christmas Tree Shops believed that Christmas Tree Shops had copied the sconce from The Glass Eye.

## Conclusions

The Glass Eye is known for its wall sconce.  When its customers see the sconce, or one very similar to it, they believe the source of the sconce is The Glass Eye.   The Glass Eye wall sconce has achieved secondary meaning.

Further, the survey demonstrated that The Glass Eye's customers and Christmas Tree Shops customers overlap considerably.

Finally, the survey demonstrates customer confusion about the source of the wall sconces sold at Christmas Tree Shops.

1

1                                Volume: I

2                                Pages: 1-46

3                                Exhibits: 42-43

4          IN THE UNITED STATES DISTRICT COURT

5          FOR THE DISTRICT OF MASSACHUSETTS

6                CA No. 04 12698 JLT

7     - - - - - - - - - - - - - - - - - - -X

8     JOHN KNIGHT, DONNA RUSSELL KNIGHT,

9     CHARLES COLE, VIIU NIILER, COUNTRY

10    GLASS SHOP, AUNT SADIES, INC., and

11    SUSAN BOERMAN,

12                            Plaintiffs,

13    vs.

14    CHRISTMAS TREE SHOPS, INC.,

15                            Defendant.

16    - - - - - - - - - - - - - - - - - - - X

17          DEPOSITION OF CHARLES BILEZIKIAN

18                February 7, 2006

19                   2:00 p.m.

20    Mintz Levin Cohn Ferris Glovsky and Popeo, P.C.

21                One Financial Center

22                Boston, Massachusetts

23

24          Reporter:  Nancy L. Russo

20

1    in the US to go to Asia.

2         A.    I left Boston a day or two after Christmas

3    and got home the 1st of February.

4         Q.    What countries did you go to?

5         A.    Hong Kong, China and Thailand.

6         Q.    You're talking about the People's Republic of

7    China?

8         A.    Yes.

9         Q.    You weren't in Taiwan as well?

10        A.    No, I was not in Taiwan.

11        Q.    Do you see anything wrong legally or morally

12   with copying from a New England designer and having

13   their products copied overseas?

14        A.    That is a terrible question.

15        Q.    Just answer it.

16        A.    I don't know if it's moral issue or -- I

17   can't speak if it isn't a moral issue.

18             MR. BIAGETTI:    Well, I'm not going to

19   let you answer it with regard to a legal issue because

20   that is up to your lawyers.

21        Q.    Well, answer it as a moral issue.

22        A.    I think that there is a respect you should

23   have for everyone's work, and I see no reason to have

24   to copy exactly someone else's work.